# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:07-CR-54 |
| | ) | |
| JUSTIN LEE STUCKEY | ) | |

## OPINION AND ORDER

The Defendant, Justin Lee Stuckey, is awaiting sentence for a wire fraud conviction under 18 U.S.C. § 1343 after entering a plea of guilty on October 9, 2008. This matter is before the Court on the Defendant's objection to the restitution amount proposed by the Government and the Presentence Investigation Report (PSR). The Court overrules the objection, as it is presented at this time, but withholds final ruling on this issue until the sentencing hearing because the Defendant and the Government have the right to provide evidence and make arguments on the issue before the Court imposes the sentence.

## FINDINGS OF FACTS

The Court makes the following findings of facts based on the record in the case and evidence presented by the Government during the evidentiary hearing and in its exhibits attached to its memoranda.

On May 24, 2007, the Government indicted the Defendant on five criminal counts of wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1343 and 2. The Indictment [DE 1] states that the Defendant, as owner and operator of Maximum Mortgage, in 2002 submitted false and fraudulent mortgage documents to ABN AMRO, a mortgage lender located in Ann Arbor, Michigan, on behalf of James Ruck Null and James Ryan Null, who wanted to purchase

rental properties in Fort Wayne, Indiana, from Rex Wells, owner of Alliance Property Management, located in Fort Wayne. (Indictment, ¶¶ 2–6; PSR ¶¶ 17–21.) The Defendant's loan submissions falsely stated that the Nulls had owned properties for more than one year, they had equity in the properties, they were seeking refinancing, they had paid the mortgages, and they were receiving rental income. (PSR ¶¶ 22–24.) This caused ABN AMRO to approve the loans, which the company would not have done had it known accurate information about the applicants. (*Id.* ¶¶ 25–26.) The Defendant also fraudulently obtained loans with this method for Leif Brogren and Jean Markey. (*Id.* ¶ 27.) After the fraud came to light, ABN AMRO put the properties into receivership with Brighton Real Estate (Brighton) to be sold.

One complication in this case is that the original lender and victim, ABN AMRO, was purchased in January 2007 by Citigroup (Citi). (Govt. 1st Mem. on Restitution 1, DE 47; Govt. 3rd Mem. on Restitution 1, DE 55 (citing Ex. 1, DE 55-2)) Citi submitted a loss amount of $5,576,049. (Govt. 1st Mem. on Restitution 1; Govt. 1st Mem. on Restitution 1, Ex. 1, DE 47-2.) However, "[d]uring the merger, the division of ABN-AMRO that was responsible for handling loss issue . . . has been dissolved, and the database used to calculate loss no longer exists." (Govt. 1st Mem. on Restitution 1.) As a result, the Internal Revenue Service submitted a loss and restitution calculation. (*Id.*) Special Agent Amy Cain of the IRS Criminal Investigation Division testified at a January 29, 2009, evidentiary hearing about how she calculated the loss amount in the case.

Cain testified that she did not use ABN AMRO information in her loss amount calculation but instead relied on information from Brighton. Brighton provided the sale amount of the properties to Cain. Cain agreed with counsel for the Defendant that the victim's loss

amount should be reduced by what the victim obtained by the civil settlement. At the time of the hearing, Cain and the Government did not have the civil settlement figures. The Government obtained that information after the hearing and filed it on the record. (*See* Govt. 2nd Mem. on Restitution, DE 51.)

Brogren had approximately 70 properties. The Government revised the loss amount for these, stating that they all (rather than 17, as originally calculated) "are considered a total loss to ABN AMRO as it is now known that those properties were purchases by Rex Wells in settlement of the civil suit against him." (Govt. 2nd Mem. on Restitution 2, DE 51.) The resulting loss amount for the Brogren properties was $2,400,270.00. (Govt. 2nd Mem. on Restitution Ex. 1, DE 51-2.) Cain testified that Markey's properties were still considered a performing loan, so they were not included in the IRS loss calculation. (*See also* PSR ¶ 27.)

The IRS calculated the loss from the Nulls as follows: The Nulls returned their property to ABN AMRO, which then transferred the property to Brighton, the receiver. The IRS calculated the loss as the difference between the loan amount and the sale amount of the properties. Cain acknowledged during the hearing that she did not include information—such as various costs and fees—in the calculation that would have increased the loss amount. For James Rick Null, the amount was $1,013,167.00. (Govt. 1st Mem. on Restitution 2; Govt. 1st Mem. on Restitution, Ex. 3, DE 47-2.) For James Ryan Null, the loss amount was $543,691.00. (Govt. 1st Mem. on Restitution 2; Govt. 1st Mem. on Restitution, Ex. 4, DE 47-2.) The loss from the Nulls' and Brogren's properties totals $3,957,128.00. (Govt. 2nd Mem. on Restitution 2; *see also* PSR ¶ 42.)

However, a related civil lawsuit, which was filed by ABN AMRO against those involved

in these loans, affects the loss and restitution amount. Several persons paid ABN AMRO a total of $1,662,500.00 to settle that lawsuit. (*Id.*; Supplement to Govt. 2nd Mem. on Restitution, DE 52.) That amount is deducted from the earlier loss amount, resulting in a figure of $2,294,628.00. (*See* PSR ¶¶ 43–44.) There is one last wrinkle: ABN AMRO received an insurance payment from Alcover Insurance Company (Alcover) for a claim involving these mortgages in the amount of $379,243.28. (Govt. 3rd Mem. on Restitution 1–2, DE 55; Govt. 3rd Mem. on Restitution, Ex. 2, DE 55-2.) When that amount is deducted from the loss amount, the final restitution figure for ABN AMRO (now Citi) is $1,915,384.72. The Government proposes that Alcover should receive a payment equal to what it paid to ABM AMRO, $379,243.28. (Govt. 3rd Mem. on Restitution 1–2.)

The following chart shows the loss calculation amount:

| | |
|---|---|
| ABN AMRO/Citi loss from Lief Brogren Properties: | $2,400,270.00 |
| ABN AMRO/Citi loss from James Rick Null Properties: | $1,013,167.00 |
| ABN AMRO/Citi loss from James Ryan Null Properties: | $ 543,691.00 |
| Total Loss and Restitution Amount   = | $3,957,128.00 |
| Less Civil Lawsuit Settlement Payments: | $1,662,500.00 |
| Less Alcover Insurance Payment: | $379,243.28. |
| ABN AMRO/Citi Restitution Amount   = | $1,915,384.72 |

**CONCLUSIONS OF LAW**

"The Mandatory Victims Restitution Act (MVRA) requires a defendant convicted of certain crimes, 'including any offense committed by fraud or deceit,' to make restitution to the victims of the offense in an amount equal to the value of the property damaged or lost." *United States v. Hosking*, — F.3d —, 2009 WL 1544446, at *2 (7th Cir. June 4, 2009) (quoting 18

U.S.C. § 3663A(a)(1), (b)(1), (c)(1)(A)(ii)). Section 3664 governs how the Court determines the restitution amount. "The district court is required to base its restitution order, to the extent practicable, on 'a complete accounting' of the loss. If the presentence report or other report of the loss is insufficient for this purpose, the court may require additional documentation or hear testimony." *Hosking*, at *3 (citation omitted) (quoting 18 U.S.C. § 3664(a) & (d)). The Government has the burden to show the amount of the victim's loss by the preponderance of the evidence. 18 U.S.C. § 3664(e); *Hosking*, at *3.

At the evidentiary hearing, the Defendant acknowledged that ABN AMRO was the victim but objected to the loss amount calculation. The Defendant argued that the Government's evidence did now show what the victim received from the properties involved in the case. However, the Defendant's argument was focused on the fact that, at that time (during the hearing), the civil settlement amount was unknown, making a total and final loss amount uncertain. That was correct at the time, but the Government has since provided the amount of the civil settlement, and the Defendant has not made any argument about the reliability of that information. (*See* Def. Resp. 1, DE 57 (stating that the Defendant "has no additional authority or factual information to present")). The Defendant did not articulate any other specific objection to or argument against the Government's calculation of the loss amount. Since the time of the hearing, the Government has factored the civil settlement amounts (as well as the insurance payment) into the loss calculation.

The Court finds that the Government has met its burden of demonstrating the victim's loss amount. The Government relied on the IRS's calculations, which was based on information from Brighton, the victim's third-party receiver for the property at issue. There is no basis in the

5

record to doubt the accuracy, reliability, or validity of Brighton's information or the IRS calculations. The Defendant has not put forth an alternative method of calculating the loss amount or alternative information to make that calculation.

At this time, the Court concludes that the total loss amount in the case is $3,957,128.00. However, that is not necessarily the restitution amount to which ABN AMRO/Citi is entitled. Section 3664 has two relevant provisions. "In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B). The statute also states:

> (1) If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.
> (2) Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—
>     (A) any Federal civil proceeding; and
>     (B) any State civil proceeding, to the extent provided by the law of the State.

§ 3664(j). Accordingly, the Court concludes that the "amount of restitution," § 3664(f)(1)(B), is $3,957,128.00, not any lesser amount that reflects the civil settlement or the insurance payments.

At the same time, the restitution *to which ABM AMRO is entitled*, or the appropriate amount of restitution, is a different matter than the amount of restitution in and of itself in light of the related compensation it has already received. *See* § 3664(j); *United States v. Gallant*, 537 F.3d 1202, 1253 (10th Cir. 2008) (stating that the language of § 3664(f)(1)(B) "does not bar a sentencing court from considering the availability of other relief in determining whether any

6

restitution award would be appropriate"); *United States v. Crawford*, 169 F.3d 590, 593 (9th Cir. 1999) ("While insurance settlements are excluded in the initial computation of the amount of restitution owed, once that total amount is determined, the defendant is entitled to have the amount of restitution reduced by any amount later recovered by the victim as compensatory damages for the same loss."), cited and quoted with approval in *United States v. Alalade*, 204 F.3d 536, 540 n.4 (4th Cir. 2000). Victim ABN AMRO/Citi "received compensation from insurance or any other source," 18 U.S.C. § 3664(j)(1), namely insurer Alcover and the civil lawsuit settlement in the amounts of $379,243.28 and $1,662,500.00, respectively. As a result, the restitution amount owed to victim ABN AMRO/Citi is $1,915,384.72. Under § 3664(j)(1), Alcover is entitled to a restitution payment in the amount it previously paid to ABN AMRO/Citi, $379,243.28, but the Defendant must pay ABN AMRO/Citi's restitution amount first before paying Alcover. § 3664(j)(1) ("[T]he restitution order shall provide that all restitution of victims required by the order be paid to the victims *before any restitution is paid to such a provider of compensation*.") (emphasis added).

The last issue is the schedule of restitution payment. *See* § 3664(f)(2) & (3) (requiring the court to set a repayment schedule in light of several factors and granting the court discretion to set the kind of payment). Having considered the financial profile of the Defendant in paragraphs 90 through 93 of the PSR and the statutory factors, the Court directs the Defendant to pay $1,915,384.72 in restitution to Citi through the Clerk's Office in the amount of $150.00 per month, commencing 30 days after placement on supervision until said amount is paid in full. Once that amount is paid in full, the Defendant will pay $379,243.28 in restitution to Alcover through the Clerk's Office in the amount of $150.00 per month. Also, the Defendant shall make

restitution payments from any wages earned in prison in accordance with the Bureau of Prisons Financial Responsibility Program. Any portion of the restitution that is not paid in full at the time of the Defendant's release from imprisonment shall become a condition of supervision. In addition, pursuant to 18 U.S.C. § 3664(k), the Defendant shall notify the Attorney General, the United States Attorney's Office for the Northern District of Indiana, and the Probation and Pretrial Services Office for the Northern District of Indiana, of any material change in the Defendant's economic circumstances that might affect the Defendant's ability to pay restitution.

The Court emphasizes that this is a preliminary ruling and subject to change should any new information come to light or new arguments be put forth. The Court will make its final restitution order at the sentencing hearing after considering any additional evidence and arguments.

ENTERED on June 19, 2009.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT